## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

FIDELITY NATIONAL
TITLE INSURANCE COMPANY,

     Plaintiff,

     v.

JAMES H. PERKINS, JR. and
JESSICA PERKINS,

     Defendants.

Civil Action No. 22-3094

## MEMORANDUM OPINION

Plaintiff Fidelity National Title Insurance Company ("Fidelity"), incorporated in Florida, has filed suit against Defendants and Counterclaim Plaintiffs James Halleck Perkins, Jr. and Jessica Perkins ("Defendants"), who secured a title insurance policy from Fidelity in relation to their purchase of a residential property in Potomac, Maryland. Fidelity seeks a declaratory judgment that claims by Defendants relating to an underground septic easement held by their neighbors are excluded from the coverage of the title insurance policy. Defendants have filed an Answer and a Counterclaim in which they seek a declaratory judgment and bad faith damages against Fidelity. Fidelity has filed a Motion to Dismiss the bad faith damages counterclaim. Upon review of the filings, the Court finds that no hearing is necessary. D. Md Local R. 105.6. For the reasons set forth below, Fidelity's Motion will be DENIED.

## BACKGROUND

### I.    The Title Insurance Policy

On or about December 3, 2020, Defendants James and Jessica Perkins obtained a title insurance policy ("the Policy") from Fidelity which provided coverage for title defects relating to

a residential property in Potomac, Maryland which they purchased from Sandy Spring Builders. The Policy provided coverage for multiple "Covered Risks," including when "Someone else has rights affecting Your Title because of leases, contracts, or options" and when "Someone else has an easement on the Land." Answer & Counterclaim ("Countercl.") at 13-14, ECF No. 23. Defendants closed on the purchase of the Property on September 18, 2020.

## II.     The Septic Easement

According to Defendants, after the closing on the Property, an easement was recorded in the relevant land records granting the owners of a neighboring property the right to have and use an underground septic system on the Property. Although the sales contract referenced a possible underground septic easement and included a depiction of a "[two]-trench underground system" as illustrative of the potential easement, the deed that Defendants received from the seller at closing made no reference to this easement. *Id.* at 14. Defendants acknowledge that they were aware of the possibility that there would be an underground septic easement on the Property in favor of the neighboring property, but they assert that they were told that it would not be necessary because a sand mound system for waste disposal on the neighboring lot had passed certain tests. According to Defendants, they had no notice of the terms of the recorded easement, which were "far more onerous" than they had been led to believe and permitted a more invasive septic system than a two-trench underground system. *Id.* at 15. The terms of the recorded easement gave the owners of the neighboring lot "a unilateral right . . . to completely fence off the easement area" and "to significantly reposition the easement and substantially increase its square footage." *Id.*

After Defendants purchased the Property, the neighbors engaged in construction activity to install the septic system, which has had an adverse impact on Defendants' property value. On December 13, 2021, Defendants filed an insurance claim under the Policy based on the recorded

2

easement. On March 3, 2022, the neighbors filed a lawsuit against Defendants in the Circuit Court

for Montgomery County, Maryland ("the Circuit Court Case") in which they sought a declaratory

judgment that the recorded easement was enforceable. When Defendants requested that Fidelity

provide a defense in the Circuit Court Case, Fidelity provided them with a purportedly independent

counsel to defend that case. According to Defendants, however, Fidelity, after selecting the

attorney to defend the lawsuit, directed that attorney's activities in a manner that was contrary to

Plaintiffs' interests. Fidelity did not inform Defendants that it had a conflict of interest in the

Circuit Court Case and did not inform them that they had a right to retain counsel of their own

choosing to defend the case at Fidelity's expense. The Circuit Court granted summary judgment

against Defendants and thus permitted the enforcement of the easement and the construction of the

septic system. Fidelity has now denied coverage for the costs of defending the Circuit Court Case

and has refused to fund the appeal of that case, which Defendants are pursuing at their own

expense.

## III.   Procedural History

On December 1, 2022, Fidelity filed its Complaint in this case in which it seeks a

declaratory judgment pursuant to 28 U.S.C. § 2201(a) that the Policy "excludes coverage,

including payment for losses," relating to Defendants' claim. Compl. ¶ 43, ECF No. 1. Upon the

filing of the Circuit Court Case, Fidelity had represented that, pursuant to Exclusion 4(a) of the

Policy, it reserved the right to terminate coverage if it was determined that Defendants "created,

allowed, or agreed to" the septic easement. *Id.* ¶ 40. In the Complaint, Fidelity argues that the

Circuit Court's grant of a Motion for Summary Judgment against Defendants "establishes that

[they] knew of, allowed, and agreed to the septic easement's coming creation" at the time that they

3

purchased the Property and after the purchase was completed, such that their claim is excluded from the Policy's coverage. *Id.* ¶ 42.

In their Counterclaim, Defendants assert two counts. In Count I, they seek a declaratory judgment that their claim is not excluded from the Policy's coverage in light of Exclusion 4(b) to the Policy, which states that the Policy does not provide coverage for risks "that are Known to you at the Policy Date, but not to [Fidelity], unless they are recorded in the Public Records at the Policy Date." Countercl. at 17. In Count II, Defendants assert a claim for bad faith damages under Maryland law, based on their claim that Fidelity failed to disclose its conflict of interest in the Circuit Court Case, that Fidelity acted in bad faith when it selected for the Circuit Court Case an attorney who prioritized Fidelity's interests over those of Defendants and took direction from Fidelity. They also seek attorney's fees and costs both for the present case and for the appeal of the Circuit Court Case.

**DISCUSSION**

In its Motion to Dismiss, Fidelity seeks dismissal of Count II of the Counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6) based on its assertion that under Maryland law, there is no cause of action against a title insurer, whether statutory or pursuant to common law, for bad faith.

## I.   Legal Standard

To defeat a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the counterclaim must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* The Court must examine the counterclaim

4

as a whole, consider the factual allegations in the counterclaim as true, and construe the factual allegations in the light most favorable to the nonmoving party. *See Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005).

## II.    Statutory Claim

Fidelity argues that to the extent that Defendants are asserting a statutory claim of bad faith, the relevant statute does not provide for such a claim. Section 3–1701 of the Courts and Judicial Proceedings Article of the Maryland Code provides that an insured party may assert a cause of action "[t]o determine the coverage that exists under the insurer's insurance policy," or "[t]o determine the extent to which the insured is entitled to receive payment from the insurer for a covered loss," and that in such an action the insured party may "allege[] that the insurer failed to act in good faith." Md. Code Ann., Cts. & Jud. Proc. § 3–1701(d) (West 2020). In such an action, if the insurer is found to have "failed to act in good faith," the insured party may recover actual damages, expenses, and litigation costs, including attorney's fees. *Id.* § 3–1701(e). Such a statutory claim may not be filed until after the insured party has first exhausted administrative remedies available through the Maryland Insurance Administration. *See id.* § 3–1701(c)(1); Md. Code Ann., Ins. § 27–1001 (West 2017). Fidelity argues, however, that this provision is unavailable to Defendants because the statute specifically provides that it applies only to "first-party claims under property and casualty insurance policies or individual disability insurance policies issued, sold, or delivered" in Maryland, *id.* § 3–1701(b), and thus does not apply to claims under title insurance policies. Notably, Defendants do not claim that their bad faith claim is premised on section 3–1701 and provide no basis to dispute Fidelity's argument that this provision does not apply to claims arising under title insurance policies. Under these circumstances, and

5

where Defendants identify no other statutory provision as the basis for their claim for bad faith damages, the Court agrees with Fidelity that there is no statutory basis for that claim.

## III.    Common Law Claim

Defendants instead argue that their claim for bad faith damages, based on their assertion that "Fidelity has breached its express and implied obligations under the Policy and has engaged in bad faith," Countercl. at 19, is grounded in common law.

Generally, insurance disputes are matters of contract, not tort. *Mesmer v. Md. Auto. Ins. Fund*, 725 A.2d 1053, 1061 (Md. 1999) ("We have repeatedly indicated that the obligation to defend and the obligation to indemnify are entirely contractual."). "In Maryland, insurance policies are treated like other contracts. Except as modified by statutes or regulations, the legal principles applicable to contracts generally are also applicable to insurance policies." *Id.* at 1058. In *Mesmer*, the Court of Appeals of Maryland, now the Supreme Court of Maryland ("the Maryland Supreme Court"), stated in the course of discussing insurance policies that "[a] contractual obligation, by itself, does not create a tort duty," and that although "a tort action in favor of a contracting party can be founded upon a duty arising out of the contractual relationship, . . . the duty giving rise to the tort cause of action must be independent of the contractual obligation." *Id.* (quoting *Wilmington Trust Co. v. Clark*, 424 A.2d 744, 754 (Md. 1981)). Under these principles, the court found that a denial of coverage and refusal to defend the insured against a claim brought by a third party was based on a breach of the contractual duty to defend, not tort law. *Id.* at 1057-58.

The court, however, also recognized that a tort duty could "grow[] out of the manner in which a contractual obligation is undertaken" and distinguished between claims based on a complete failure to undertake a contractual obligation, which sound in contract, and claims based

6

on conduct during the performance of a "contractual undertaking actually begun." *Id.* at 1060.
The court identified one such tort claim in the insurance context: a tort based on an insurer, upon
having agreed to defend against a claim, acting in bad faith in failing to settle the claim within the
policy limits. *Id.*; *see Fireman's Fund Ins. Co. v. Continental Ins. Co.*, 519 A.2d 202, 204 (Md.
1987) ("It is well-settled Maryland law that an insured has a cause of action against its insurance
company for bath faith refusal to settle a claim within the policy limits."); *Allstate Ins. v. Campbell*,
639 A.2d 652, 658 (Md. 1994). The rationale underlying such a tort claim is that once an insurer
undertakes to defend the insured in a tort action brought by a third party, it has "control over the
settlement and defense." *Mesmer*, 725 A.2d at 1062. At that point, there is "a potential conflict
of interest giving rise to a fiduciary duty" which may manifest itself if the insurer is offered a
settlement within the policy limit, under which the insurer would pay the full settlement amount
and the insured would have no financial obligation, but declines to accept it only to later be
subjected to a judgment above the policy limit, resulting in liability for the insured. *See id.*

The parties have not identified, and the Court has not found, examples of tort claims arising
in this context other than the specific tort of bad faith failure to settle within the policy limits.
Defendants, however, effectively argue for an extension of the principles underlying such a tort to
the present circumstances. Defendants rely on *Brohawn v. Transamerica Insurance Co.*, 347 A.2d
842 (Md. 1975), in which the Maryland Supreme Court held that an insurer could not avoid its
contractual duty to defend the insured because of a potential conflict of interest that could arise
during the representation. *Id.* at 851. In *Brohawn*, the insured was sued for allegedly causing
injuries to nursing home workers during a physical altercation occurring when they attempted to
stop her from removing her grandmother from the nursing home, and under the relevant insurance
policy, the insurer had a duty to provide a defense unless the insured had acted with the intent to

7

cause injury or damage to a person or property. *Id.* at 845-46. The potential conflict of interest arose because if the insured were deemed to be liable for damages, the insured would have an interest in a finding that her conduct was negligent and thus covered by the insurance policy, while the insurer would have an interest in a finding that the conduct was intentional and thus excluded from the policy's coverage. *See id.* at 851. The court held that even when such a conflict of interest exists, "the insured must be informed of the nature of the conflict and given the right either to accept an independent attorney selected by the insurer or to select an attorney" of its own choice, with the insurer assuming the reasonable costs of the representation. *Id.* at 853-54. Because the insurer in *Brohawn* had not undertaken any defense at all, the claim in that case sounded in contract, so the court did not have occasion to consider whether there was a viable tort claim under the circumstances. *See Mesmer*, 725 A.2d at 1058; *Brohawn*, 347 A.2d at 851. Nevertheless, *Brohawn* arguably establishes that an insurer owes a duty of care to an insured when it undertakes the defense of a claim in which there is a potential conflict between the interests of the insurer and those of the insured.

Here, Defendants' asserted tort claim, though different from the established tort claim of bad faith failure to settle a claim within the policy limits, is grounded in the same principles. It is based not on an outright refusal to defend the insured against a claim asserted by a third party, but on a claim that once having undertaken to provide a defense, Fidelity had control over the litigation in which there was "a potential conflict of interest giving rise to a fiduciary duty," specifically the fact that a finding that Defendants were aware of the septic easement before the closing would be detrimental to Defendants but would be favorable to Fidelity, which could use such a finding to exclude coverage. *See Mesmer*, 725 A.2d at 1062. Thus, while there is no specific precedent for a bad faith tort claim under the precise circumstances present here, the parties have not identified,

8

and the Court has not found, any precedent that forecloses such a claim. Rather, Defendants have put forth a claim that represents a plausible extension of existing law, specifically the recognized tort of bad faith failure to settle a claim within the policy limits. Notably, "Rule 12(b)(6) dismissals 'are especially disfavored in cases where the complaint sets forth a novel legal theory that can best be assessed after factual development.'" *Wright v. North Carolina*, 787 F.3d 256, 263 (4th Cir. 2015) (quoting *McGary v. City of Portland*, 386 F.3d 1259, 1270 (9th Cir. 2004)). The Court therefore declines to dismiss Count II at this early stage.

Fidelity's citation of *Johnson v. Federal Kemper Insurance Co.*, 536 A.2d 1211 (Md. Ct. Spec. App. 1988), does not alter this conclusion. In *Johnson*, a case that predated the enactment of the statutory cause of action under section 3–1701, the court stated that "Maryland law does not recognize a specific tort action against an insurer for bad faith failure to pay an insurance claim." *Id.* at 1213. This holding, however, applied to a first-party claim under which the insured submitted a claim to the insurer, only to have the claim denied. *Id.* at 1212-13. Here, Defendants' proposed tort claim is grounded not in a failure to pay a claim or provide a defense to a claim, but in the specialized context of a claim that the insurer, once having agreed to provide a defense, breached a duty of care by failing to prevent a conflict of interest from adversely impacting the insured. Indeed, *Johnson* specifically distinguished the first-party claim under consideration in that case from the recognized tort claim for bad faith failure to settle within the policy limits on which Defendants' proposed tort claim is modeled. *See id.* at 1213.

For these reasons, the Motion will be denied.

9

## CONCLUSION

For the foregoing reasons, Fidelity's Motion to Dismiss Count II of the Counterclaim will be DENIED.  A separate Order shall issue.

Date:   November 14, 2023

THEODORE D. CHUANG
United States District Judge